UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-01407-SK                    Date: July 17, 2026

Title           OJ Commerce LLC v. Traffic Tech Inc.

Present:  The Honorable:  Steve Kim, United States Magistrate Judge

| Connie Chung | n/a |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff(s)/Petitioner(s): | Attorneys Present for Defendant(s)/Respondent(s): |
|---|---|
| None present | None present |

**Proceedings:**          (IN CHAMBERS) **ORDER GRANTING PARTIAL SUMMARY JUDGMENT FOR OJ COMMERCE ON TRAFFIC TECH'S LOST-PROFITS COUNTERCLAIM**

This order addresses whether Traffic Tech, Inc. (TT) has adduced sufficient evidence for a rational jury to calculate the amount of TT's claimed lost profits on its breach-of-contract counterclaim against OJ Commerce, LLC (OJC).  TT claims that OJC wrongfully terminated a three-year contract; that it was ready, willing, and able to perform its end of the bargain for all three years; and that it would have earned approximately $1.3 million in net profits over those years if OJC hadn't terminated the contract early.  Having reviewed TT's proffer of the damages evidence it would present at trial, the court finds that TT has insufficient evidence creating a genuine dispute over whether it lost 1.3 million in net profits even if OJC were found to have wrongfully terminated the contract early.[1]  *See Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. District*, 34 Cal. 4th 960, 975 (2004); *GHK Assocs. v. Mayer Grp., Inc.*, 224 Cal. App. 3d 856, 873 (1990).

Lost profits can be awarded only if they are demonstrated to a reasonable degree of certainty.  *See Sargon Enters., Inc. v. Univ. of S. Cal.*, 55 Cal. 4th 747, 773–75

---

[1] All discovery—fact and expert—is indisputably closed.  (ECF 29).  TT also had ample notice and opportunity to identify admissible evidence produced in that discovery period for its net lost-profits calculation.  (ECF 215).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-01407-SK                         Date: July 17, 2026

Title        OJ Commerce LLC v. Traffic Tech Inc.

(2012); *Kids' Universe v. In2Labs*, 95 Cal. App. 4th 870, 883 (2002).  The party seeking lost profits has the burden of producing the best evidence available in the circumstances.  *See Warner Constr. Corp. v. City of Los Angeles,* 2 Cal. 3d 285, 302 (1970); *Stott v. Johnston*, 36 Cal. 2d 864, 876 (1951).  Established businesses may prove prospective profits through expert testimony, economic and financial data, market surveys, business records of similar enterprises, and prelitigation business projections.  *See Parlour Enters., Inc. v. Kirin Grp., Inc.*, 152 Cal. App. 4th 281, 288 (2007).  In all cases, California law limits recovery to net profits.  *See* Cal. Civ. Code § 3358 ("No person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides.").

TT's proffered evidence consists of a pre-litigation spreadsheet, a declaration from Eduardo Santana, and deposition testimony from OJC's corporate representative acknowledging the warehousing agreement's minimum purchase commitments.  (ECF 222).  Using that agreement's quotation, TT multiplied the figures for warehouse storage (200,000 cubic feet per day), containers (60 per month), and orders (24,000 per month) to reach a mandatory minimum revenue for the contract term of $3,099,600.  (ECF 222 at 2–3; Weiss Depo. at 379:2–12; 381:5–8; 386:24–387:13).  From there, TT applied a 42% profit margin—derived from the spreadsheet itself—to arrive at $1,301,832 in lost profits.  (ECF 222 at 4–5).  According to TT, the projected costs used to determine the profit margin are based on "historical data" (*id.*), and the 42% profit margin is consistent "with similar agreements with other customers."  (ECF 222-3 at 6 (Santana Decl. ¶ 19)).

Almost all this proffered information is assertion masking as competent evidence—it jumps to the conclusion TT wants the jury to reach, but doesn't supply the minimally reliable evidence the jury needs to get there.  To be sure, minimum purchase commitments can anchor lost-revenue calculations.  *See Parlour Enters.*, 152 Cal. App. 4th at 288.  But minimum purchase commitments establish only what OJC was obligated to buy—not what TT would have earned after deducting the cost of performance.  The critical gap in TT's case remains the cost side of the equation.  The spreadsheet's cost inputs are unsupported by a single underlying document—but TT

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-01407-SK                              Date: July 17, 2026

Title        OJ Commerce LLC v. Traffic Tech Inc.

says that doesn't matter.  (ECF 222 at 3 n.1).  Not so.  Even the cases TT cites involved prelitigation projections analyzed by experts to offer helpful testimony for a jury to calculate lost profits with reasonable certainty.  *See Vieste, LLC v. Hill Redwood Dev., Ltd.*, 2011 WL 5914019, at *10 (N.D. Cal. Nov. 28, 2011) (expert report used prelitigation projections to estimate costs); *Karma Auto. LLC v. Lordstown Motors Corp.*, 2022 WL 17886045, at *24 (C.D. Cal. Nov. 18, 2022) (similar).  In both cases, the prelitigation projection was a building block for expert analysis—not the standalone evidence TT asks the Court to treat it as here.  By disavowing the need for an expert that its own cited cases depended on, TT has effectively acknowledged that its summary spreadsheet alone lacks required evidentiary foundation for a non-speculative net profit calculation.

That is not a trivial gap.  The spreadsheet contains a rate matrix with a "Cost" column and an internal cost worksheet (ECF 222-4), but TT produced no lease agreement, no payroll records, no supplier invoices, and no data to support the figures entered.  What's more, the witness who will purportedly authenticate the spreadsheet had no hand in creating it.  (Santana Decl. ¶ 4).  It was built by Mert Selcuk, whose job duties included "financial modeling, operational cost analysis, and pricing support." (*Id.*).  And someone else named Chris Hawkins "worked with Mr. Selcuk's projections to gain insight into the viability and profitability of potential customer accounts."  (*Id.*). Hawkins, though, was a consumer of the cost model, not its architect—and Santana, by his own account, reviewed the spreadsheet but did not build it or supply its inputs.  Not least, the Santana declaration states that the costs are "derived from standard productivity assumptions, labor rates, inefficiency and fatigue factors, space utilization calculations, and projected volumes" (Santana Decl. ¶ 11)—but none of those sources are identified, none of those calculations are shown, and none of the underlying records are produced.  This string of descriptors substitutes nomenclature for methodology—the fact that a witness will repeat those things on the stand doesn't generate competent evidence that a rational jury can rely on.  *See, e.g.*,*Vital Pharms. v. Ph.D. Mktg., Inc.*, 2022 WL 2952495, at *6 (C.D. Cal. July 26, 2022) ("summary financial documents coupled with testimony, absent any documentary evidence, were insufficient"); *see also*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-01407-SK                           Date: July 17, 2026
Title       OJ Commerce LLC v. Traffic Tech Inc.

*Intenze Prods., Inc. v. TATLAB Corp.*, 2024 WL 1135103, at \*9–10 (C.D. Cal. Feb. 26, 2024) (summary profit sheet insufficient where party "fail[ed] to provide any documentation to support either the costs or discounts set forth in the sheet"); *Lalangan v. Pennington*, 2022 WL 2718160, at \*2–3 (D. Ariz. July 13, 2022) (lost profits chart insufficient where "no documents supporting the figures contained in the chart . . . were offered into evidence").

The evidentiary gap is especially glaring because TT has access to at least some data that could have filled it.  Even if OJC's *early* termination of the contract may be a confounding factor, the parties still conducted business under the warehousing agreement for four to five months.  (ECF 208).  And TT is not a startup.  It operates a 200,000-square-foot multi-client warehousing facility in the Los Angeles area with multiple long-standing customers.  (ECF 222-2 at 22–23).  California courts have accepted the use of historical data as reliable in ascertaining the reasonable amount of net lost profits.  *See Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 890 (2000) ("The extent of such [net lost profit] damages may be measured by 'the past volume of business and other provable data relevant to the probable future sales.'"); *Guntert v. City of Stockton*, 55 Cal. App. 3d 131, 143 (1976) ("Historical data supply an acceptable basis for ascertaining lost or diminished benefits suffered by an established business.").  Yet TT has failed to provide any concrete supporting data.  It did not submit actual cost records from the months it serviced OJC, financial statements, profit-and-loss reports, or any records from comparable customer accounts that could corroborate the spreadsheet's assumptions.  The bare assertion that the 42% margin "is consistent with the profit margin Traffic Tech has experienced with similar agreements with other customers" (Santana Decl. ¶ 19) is just TT's closing argument posing as financial evidence.[2]

---

[2] TT cannot rescue its profit-margin claim by calling it "conservative."  A claim that a number is low presupposes knowledge of what the true number is.  Without a verified baseline, the assertion of conservatism is itself a factual claim in need of proof.  Besides, reasonable certainty is a methodology standard, not a results standard—it determines how damages are proven, not whether the resulting number happens to be generous or stingy.  A coin flip might also produce a conservative number, but that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-01407-SK                         Date: July 17, 2026

Title         OJ Commerce LLC v. Traffic Tech Inc.

On these proffered facts, then, summary adjudication is warranted because the "uncontradicted evidence demonstrates that the award [of lost profits] is insufficient as a matter of law." *IIG Wireless, Inc. v. Yi*, 22 Cal. App. 5th 630, 649 (2018).  "Damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery." *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.,* 209 Cal. App. 4th 1118, 1132 (2012).  A lay jury cannot project multi-year revenue streams, subtract variable and fixed costs, and arrive at a net-profit figure without something approximating reliable expert analysis.  This observation applies equally to TT's witnesses, who are no better equipped to reconstruct the cost model without the spreadsheet creator's input and the underlying source data.  No admissible evidence separates gross revenue from the costs of performance—and without that separation, the $1.3 million figure is a revenue-based guess.  Even viewing TT's evidence in the light most favorable to it, the spreadsheet's cost inputs remain unsupported by a single underlying document.  Favorable inferences cannot create evidence that does not exist.  In the end, TT has adduced insufficient competent evidence for a rational jury to determine its projected net lost profits for a three-year commitment on a contract terminated after four to five months.  *See Sargon*, 55 Cal. 4th at 774.

\* \* \*

For all these reasons, partial summary judgment is GRANTED in OJC's favor on TT's counterclaim for breach of contract to the extent that it seeks three years of claimed lost profits amounting to $1.3 million.[3]  The counterclaim may proceed to trial only on TT's claim for unpaid invoices (subject to any provable offsets).

---

does not make it admissible.  As the proponent of the claim, TT must prove its lost profits with a reasonable degree of certainty; it cannot shift to OJC the burden of proving that the number is too high.

[3] The Court thus need not reach the parties' dispute over whether Section 13's 180-day termination cap limits the measure of TT's lost-profits damages.  The Court's prior ruling on that issue—that the cap cannot be applied as a matter of law because whether Section 13's conditions for termination were satisfied presents genuinely disputed fact questions (ECF 215 at 33–34)—stands but is now academic as to lost profits.  OJC's mitigation defense is likewise moot as to this claim, though it remains available on any other damages TT seeks at trial.